BLADEN RAMSEY V. P. E. DUNLOP.

No. A-1341. Decided November 12, 1947.
(205 S. W., 2d Series, 979.)

*Hill D. Hudson,* of Pecos, for appellant.

*Stubbeman, McRae & Sealy* and *Tom Sealy,* all of Midland, for appellee.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This case is here on certified questions from the Court of Civil Appeals at El Paso.

Dunlop sued Ramsey to recover the office of County Commissioner of Precinct No. 4, of Loving County. In a trial without a jury, Dunlop recovered, and Ramsey appealed. The court of civil appeals reversed the trial court's judgment and rendered judgment for Ramsey. However, pending its consideration of Dunlop's motion for rehearing, that court has certified two questions to this court.

In the general election of 1946 Ramsey and Dunlop were the only candidates for county commissioner. Ramsey got 12 votes and Dunlop got 2. Ramsey was given a certificate of election, filed his oath and bond and is holding the office.

On August 30, 1943, the Commissioners' Court of Loving County entered an order changing the commissioner's precinct lines of that county. If the order was valid, Ramsey was not a resident of Precinct No. 4 and not eligible to hold the office; on the other hand, Dunlop was a resident of the precinct and was eligible.

Ramsey and Dunlop agreed in the trial court that the only issues for decision were their respective residences, the true location of the precinct lines of Loving County, and the validity

of the order of the Commissioners' Court on August 30, 1943, changing the precinct lines.

So, in his appeal there was no point of error in Ramsey's brief urging that Dunlop was not elected to the office of county commissioner because he had received only 2 of the 14 votes cast. Nevertheless the court of civil appeals held that Dunlop was in no event entitled to the office because it affirmatively appears from the record that he received neither a majority nor a plurality of the votes cast and was therefore not legally elected. In his motion for rehearing Dunlop urged that the court erred in so holding because it had no authority to reverse the trial court's judgment on an error not assigned. With Associate Justice Sutton insisting on the correctness of the original holding and the other members of the court in doubt, the court of civil appeals has certified the following questions:

"Did we err in determining this cause on a point not assigned as error in the brief of appellant?

"If the foregoing question be answered in the negative, then we desire to submit this additional question: Did we err in holding that regardless of whether appellant (Ramsey) was eligible or ineligible that appellee (Dunlop) was not entitled to the office not having received either a majority or plurality of votes cast at the election for the office in question? In connection with this last question, we most respectfully call attention to Articles 2927 and 3032, R. S. 1925, to the case of Allen v. Fisher, 118 Texas 38, 9 S. W. (2d) 731, and 20 C. J., p. 207, par. 267; 29 C. J. S., p. 353, sec. 243."

■ In view of our conclusions, it seems proper to answer the second question first.

In Allen v. Fisher, 118 Texas, 38, 9 S. W. (2d) 731, cited in the certificate, Allen and Braley were candidates in the second primary of 1928 for the democratic nomination for district attorney. Braley got a majority of the votes, whereupon Allen, suing the proper officers, sought an injunction to restrain the certification of Braley's name and to require the certification of his own. He alleged that Braley did not reside in the district concerned either when the petition was filed or at any time theretofore, which fact was known to the voters at the time of the election; and that, therefore, Braley was ineligible for the office and disqualified to be nominated. The court of civil appeals certified the following question: "If it is required that Braley

be a resident of the Thirty-first judicial district * * * in order to be such eligible candidate or nominee * * * we ask whether or not the next highest candidate at such (July primary) election should be declared the nominee?" in answering "No," this court said: "Under the provisions of Article 3102 of the statutes (R. S., 1925), no candidate for the office of district attorney is entitled to have his name go on the official ballot at the general election in November, as the nominee of the Democratic party, unless, in the primary election held by that party, he receives a majority of the votes cast for all the candidates for said nomination. The allegations of the plaintiff's petition show that the plaintiff, as candidate for the nomination for district attorney, did not receive such a majority in either the July or August primary election. Regardless, therefore, of whether Braley is eligible or not, the plaintiff cannot be declared the democratic nominee for that office. For, notwithstanding a candidate be ineligible to the office he seeks, and thereby disqualified to be nominated therefor, and is known by the voters to be so, the votes cast for him must be taken into account in determining whether or not his opponent has received a majority of the votes cast."

Although that case deals with a primary election wherein Art. 3102, supra, requires that a candidate for district attorney must get a majority of the votes cast for all candidates for that nomination before he can go on the general election ballot as the democratic nominee, whereas we are here considering Art. 3032, R. S. 1925, which declares that after the general election the county judge "shall deliver to the candidate * * * for whom the greatest number of votes have been polled for * * * precinct officers a certificate of election," we see no difference in the principle to be applied. If public policy, as declared in Art. 3102, requires that the votes cast for an ineligible primary candidate be counted to determine whether his rival has received a majority of the votes cast, we think it follows that the public policy declared in Art. 3032, that a certificate of election be delivered to the candidate for whom the greatest number of votes have been polled, likewise requires that the votes cast for an ineligible general-election candidate be taken into account in order to determine whether his opponent has received the greatest number of votes.

That is clearly the import of 29 C. J. S., p. 353, sec. 243, wherein it is said: "It is a fundamental idea in all republican forms of government that no one can be declared elected * * * unless he * * * receives a majority or a plurality of the legal

votes cast in the election. Accordingly, the general rule is that the fact that a plurality or a majority of the votes are cast for an ineligible candidate at a popular election .does not entitle the candidate receiving the next highest number of votes to be declared elected." To the same effect is 20 C. J., p. 207, par. 267. See, also, 18 Am. Jur., p. 353, sec. 263.

Our holding in no way limits the force of Art. 2927, R. S., 1925 (as amended by Acts 50th. Leg. Reg. Ses., 1947, p. 778), cited in the certificate, which declares that no ineligible candidate shall ever have votes counted *for him*, at any general, special or primary election. We are not holding that the votes cast for Ramsey must be counted for him but only that they must be taken *into* account in determining whether or not Dunlop received the greatest number of votes cast.

There being no question as to the legality of the 12 votes cast for Ramsey other than that he was ineligible to hold the office, it is quite evident that the 2 votes cast for Dunlop did not constitute a plurality of the total votes polled. Therefore, we answer the second question "No."

■ The first question certified arises because of the repeal of Art. 1837, R. S., 1925, by the Texas Rules of Civil Procedure (Acts 1939, 46th. Leg., p. 201, Sec. 1; (136 Texas 433, Vernon's Texas Rules Civ. Pro. (1942), p. 628).

Art. 1837 provided that a trial in a court of civil appeals shall be: " * * * upon an error in law either assigned or apparent upon the face of the record." It first appeared in our statutes in 1846 as Section 24, of an Act to Organize the Supreme Court of Texas. Gammel's Laws of Texas, Vol. 2, p. 1562; Art. 1581, Paschal's Annotated Digest, 4th. Ed., Vol. 1. It read: "In all cases of appeal to the Supreme Court, the trial shall be * * * on an error in law *either assigned or apparent on the face of the record.*" (Italics ours.) As Art. 1033, R. S., 1879, Art. 1014, R. S., 1895, and Art. 1607, R. S., 1911, it remained without change until repealed in 1940, except that when our courts of civil appeals were organized by Acts of 22d. Leg. 1st C. S., 1892, c. 15, p. 29, Sec. 24, Gammel's Laws of Texas, Vol. 10, p. 393, Art. 1014, R. S., 1895, it was applied to those courts rather than to the Supreme Court.

In 1850, by Acts 3rd. Leg., Sec. 9, of an Act Concerning Proceedings in the Supreme Court, it was provided, "The appel-

lant or plaintiff in error, shall in all cases file with the clerk of the court below, an assignment of errors, distinctly specifying the grounds on which he relies, * * *; *and all errors not so distinctly specified, shall be considered by the Supreme Court as waived.*" Gammel's Laws of Texas, Vol. 3, p. 611. (Italics ours.) As Art. 1037, R. S., 1879, Art. 1018, R. S., 1895, Art. 1612, R. S., 1911, and Art. 1844, R. S., 1925, it remained, in the same or substantially the same language, until it was superseded in 1940 by the adoption of Rule 374, T. R. C. P., (136 Texas, 558) except that in 1892 it was made applicable to the courts of civil appeals instead of the Supreme Court.

Apparently, there is a conflict between the statute of 1846 and that of 1850 as regards unassigned error apparent of record. And it seems reasonable to suppose that the latter statute was designed to limit the appellate court to errors assigned rather than to errors assigned *plus errors apparent upon the face of the record,* hence that the former statute was meant to be repealed to that extent.

But this court did not so treat it. Notwithstanding the statutes of 1850, the Supreme Court continued to pass on unassigned error, when it regarded the error as "fundamental." Thus, in Rankert v. Clow, 16 Texas, 9, 13, decided in 1856, it was said: "It is too well settled to admit of question, that objections to a judgment, which go to the merits and foundation of the action, will be considered, though not assigned as error." In Hollingsworth v. Holshousen, 17 Texas, 41, 47, decided the same year, it was declared that where the objection goes to the foundation of the action, or "to the very right and justice of the decision on the merits, it will be considered although not specially assigned as error." Twenty-five years later, in Siese v. Malsch, 54 Texas, 355, wherein a judgment was rendered against the surviving husband on a note executed by his deceased wife before their marriage, it was held that the judgment presented a fundamental error appearing of record, which would be decided although no error was assigned on the point. Finally, in 1912, this court attempted to harmonize the two statutes in these words: "It is evident that the meaning of the two articles * * *, when taken one in connection with the other, which must be done, is that all errors of law which are not 'apparent upon the face of the record' must be presented by assignment of error distinctly specifying the grounds on which a reliance is had for a revision of such error, and a failure to make such assignment of error must be treated as a waiver thereof." Then

it added that no case could be found in which an unassigned error apparent of record was considered "that is not based upon the ground that such error goes to the foundation of the cause of action upon which the judgment is based, and thereby destroys the validity of such judgment." Oar et ux. v. Davis et al, 105 Texas, 479, 151 S. W., 749.

Anyhow, although there are other similar cases, these are sufficient to show that the Supreme Court did not regard its jurisdiction under the statute of 1846 (Art. 1837) before 1892, or that of the courts of civil appeals thereafter, as in any way circumscribed by the statute of 1850 (Art. 1844), provided the error in question was "fundamental."

After our appellate courts thus for 89 years continued to pass on errors unassigned but apparent of record, in the face of a statute which declared that all ererors not distinctly specified by assignment in the trial court should be considered as waived, must we now hold that our courts of civil appeals have no authority to consider such errors because Art. 1837 has again been repealed by the substantial reenactment of Art. 1844 in the form of Rule 374, T. R. C. P.? As to errors that are truly fundamental, we think the answer must be *No*.

■ We shall not undertake to give an all-inclusive definition of fundamental error; but, to the purpose of this case, we do hold that an error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this state, is a fundamental error. Our meaning finds illustration in the case of Texas & Pacific Coal Co. v. Lawson, 89 Texas, 394, 400, 32 S. W., 871, 34 S. W., 919. In that case the plaintiff sued for rents alleged to be due under a written lease; the defense was that a correct statement of accounts would show that Lawson owed no rents but was due large sums by plaintiff. Although it was apparent from the petition that the contract violated the anti-trust stautes, that quesion was nowhere raised by either of the parties. But, after the submission of the case, this court itself raised the question, set aside the submission and referred "the cause back for oral and written arguments or either as counsel may desire." (89 Texas, 397, 32 S. W., 872.) Certain of the assigned errors related to the pleading and proof of efforts on the part of the plaintiff's officers to destroy Lawson's business. Noting the insistence by Lawson's counsel that the parties had nowhere questioned the legality of the contract, this court said in reference

to these assigned errors: "If the foundation of the action fails all pleadings and evidence tending to support the verdict are thereby necessarily shown to have been improperly sustained and admitted, and it would be folly for a court thereafter to undertake to determine, as we are now asked to do, whether such pleading and evidence were properly sustained and admitted upon the assumption of the legality of the cause of action. Parties litigant cannot by express waiver induce a court to pass over the illegality of a contract and administer their supposed rights thereunder based upon the assumption of its legality and certainly a mere omission to notice such vice or bring it to the attention of the court cannot have that effect."

■ Since the faith of our people stand inalienably pledged to the preservation of a republic form of government (Art. I, Sec. 2, Constitution of Texas), a fundamental idea of which is that no one can be declared elected to public office unless he receives a majority or a plurality of the legal votes cast (29 C. J. S., p. 353, Sec. 242), Art. 3032, R. S. 1925, must be regarded as declaratory of fundamental public policy in prescribing that the certificate of a candidate's right to take an office must show that he received the highest number of votes polled for any candidate therefor. Yet, merely because Ramsey and Dunlop agreed in the trial court that the only issues for decision were their respective residences, the true location of a precinct line and the validity of a commissioners' court order, we are asked to hold that the court of civil appeals has no eyes to see and no voice to say that Dunlop's petition itself affirmatively shows that his claim to the office in dispute squarely conflicts with that fundamental public policy. We cannot sanction that proposition. If our courts, in whom is imposed the judicial power of this state, cannot act of their own motion in such a situation, only because litigants whose personal interests are adverse to that public policy have waived the error, then the government of this state is indeed impotent. Regardless of whether Ramsey is ineligible to be county commissioner, it is apparent on the face of the record that Dunlop is not entitled to the office and that the trial court erred in holding otherwise. Therefore, we hold that it is both the province and the duty of the court of civil appeals to consider the error.

It has been suggested that City of Santa Anna v. Leach (Civ. App.), 173 S. W. (2d), 193, in which the application for writ of error was refused for want of merit, decides the question under consideration contrary to our holding. We have re-

examined that application as well as the transcript and the briefs and are still of the opinion that the error which the court of civil appeals declined to consider for want of authority, was not apparent on the face of the record. There was no suggestion in Leach's petition or elsewhere in the pleadings that the sums which he alleged the city agreed to pay him were not to be paid out of current funds or some fund within the immediate control of the city; hence it was not apparent on the face of the record that the city had incurred a debt without providing for leveying and collecting a tax sufficient to pay it, in violation of the Constitution. Therefore, we concluded that the court of civil appeals correctly refused to consider the error, if any, although we did not approve that court's holding that it was without authority to consider the error in any event. We approved that court's disposition of the appeal on all assigned errors, so the application was refused for want of merit. It follows that that action did not in any sense amount to a holding that the court of civil appeals is without authority to consider fundamental error when it is apparent on the face of the record. We were merely adhering to the rule that an appellate court will not go into the statement of facts to examine and weigh the evidence in order to determine whether an error was committed, even though it may be claimed to be fundamental. See Houston Oil Co. v. Kimball, 103 Texas, 94, 122 S. W., 533.

We answer the first question "No."

Opinion delivered November 12, 1947.

No motion for rehearing filed.

MR. CHIEF JUSTICE ALEXANDER, concurring.

I am in accord with the judgment rendered in this case, but I desire to make it clear that in my opinion the rule which permits a Court of Civil Appeals to reverse a judgment for unassigned error must be given a much more strict and narrow interpretation than was permissible prior to the adoption of the present rules.

Prior to the adoption of the present rules Article 1837 provided that the trial in the Court of Civil Appeals should be "upon an error in law either assigned or apparent upon the face of the record." Under that statute reversal would occur for any error of procedure committed during the trial if the error was reflected by the record and went to the foundation

of the case, even though it was unassigned. 3 Tex. Jur. 815-822. Such an error, when apparent upon the face of the record, was sometimes referred to as "fundamental error." But, as pointed out in Justice Brewster's opinion, Article 1837, which permitted the reversal upon unassigned errors apparent upon the face of the record, was repealed and Rule 374 now provides that all grounds of error not properly assigned are waived. There is no statute or rule which permits the Supreme Court to consider errors not properly assigned, and it has long been the rule tht this Court, because of the absence of such statute or rule, will not reverse a case for an unassigned error. Scalfi & Co. v. State, 96 Texas 559, 74 S. W. 754; Link v. City of Houston, 94 Texas 378, 60 S. W. 664; Schaff v. Mason, 111 Texas 388, 235 S. W. 520; Holland v. Nimitz, 111 Texas 419, 239 S. W. 185; Stephenson v. Miller-Link Lumber Co. (Com-App.), 277 S. W. 1039. Applying the same principle of law to the Court of Civil Appeals, it seems reasonable to hold that since Article 1837 has been repealed and Rule 374 declares that all unassigned ererors are waived, no error based upon a ruling of the trial court during the trial of the case would authorize a reversal of the judgment of the lower court unless the error was assigned. See Roberson v. Hughes (Com. App.), 231 S. W. 734.

Moreover, under the old statute an insufficiency in the pleadings, or insufficiency in the evidence where it could be detected without an extended examination of the statement of facts, constituted such error apparent upon the face of the record as could be raised in the Court of Civil Appeals without an assignment complaining thereof. 3 Tex. Jur. 820-827. Under Rule 90, now in force, except in cases of default, all defects in pleadings of either form or substance are waived unless complained of in the lower court, and under Rule 67 the court, with either the express or implied consent of the parties, may try an issue and enter a valid judgment thereon without pleadings to support it. Bednarz v. State, 142 Texas 138, 176 S. W. (2d) 562. Rules 370 and 375 permit the taking up of a transcript with only a part of the proceedings therein, and Rule 377 permits the filing of an abbreviated statement of facts. Consequently, a mere negative showing,—that is, that the record fails to contain sufficient pleadings or evidence to support the judgment, would not necessarily reflect error.

From the above it would seen necessarily to follow that in so far as the rights of the litigants are concerned they are not

entitled to have the court consider any error not assigned by them. It is my opinion that the Court of Civil Appeals is authorized to reverse a judgment of the trial court upon an unassigned error only when it involves a matter of public interest and when the record affirmatively and, conclusively shows that the appellee was not entitled to recover, or where the record affirmatively shows that the court rendering the judgment was without jurisdiction over the subject matter.

This suit involves the right to a public office. This is a matter not belonging exclusively to the litigants. It is a matter of public interest which transcends the rights of the parties. The agreed statement of facts affirmatively and conclusively shows that the appellee was not entitled to recover the office sued for by him, and as a consequence the Court of Civil Appeals was authorized to consider this error, even though it was unassigned. Texas & Pacific Coal Co. v. Lawson, 89 Texas 394, 34 S. W. 919. I therefore concur.

Opinion delivered November 12, 1948.