**ELLARD et ux. v. CHIARA et ux.**

No. 12466.

Court of Civil Appeals of Texas.
Galveston.

Nov. 6, 1952.

Frank G. Dyer and William H. Watts, of Houston, for appellants.

Butler, Binion, Rice & Cook, Frank Knapp and Malcolm R. Wilkey, of Houston, for appellees.

CODY, Justice.

This suit was brought by appellees, Joseph D. Chiara and wife, to rescind a certain contract in writing between said parties, under date of April 11, 1949, wherein and whereby appellants agreed to sell to appellees certain designated personal property, together with Lots Nos. 439 and 440, Block 15, Section 2, in Pelham Place, a subdivision in Harris County, known as 8003 Hempstead Road, Houston 16, Texas, together with improvements thereon situated, consisting of a structure adapted for use as a business center, by five stores or businesses, and also a separate residence; and said suit was also brought to rescind, as a part of the same transaction, as aforesaid written contract, a bill of sale and general warranty deed, both dated April 15, 1949, which purported to carry into effect or consummate the contract of April 11, aforesaid. The grounds upon which the rescission was sought were: (1) that at all material times appellee Joseph D. Chiara was mentally unsound, and incapable of understanding the effect of what he was doing, and (2), in the alternative, that said appellee was induced to make and consummate the transaction by reason of certain alleged false and fraudulent representations, etc.

Appellees alleged that, while the said Joseph D. Chiara was suffering from grandiose delusions, he executed the contract of April 11, 1949, aforesaid, and then (on April 15, 1949) paid (under the terms of the bill of sale and deed of April 15, 1949) a total of $30,000 cash, and signed a note described, and assumed the payment of notes, described in deeds of trust, totalling $34,-

704.50. In this connection it should be stated that the terms of the transaction, as incorporated in the instruments which were executed to comply with the contract of April 11, 1949, differ, in certain respects, which, with one exception, we deem it unnecessary to specify. The exception referred to is this: by the terms of the contract of April 11, 1949, the appellees agreed to assume the payment of a note of appellant to the South Texas National Bank of Houston for the principal sum of $10,237.-50, as of April 1, 1949, which said note was secured by a first lien upon the aforesaid real estate. But by the terms of the deed executed on April 15, 1949, aforesaid, the conveyance of the real estate aforesaid by appellants to appellees was made *subject* to aforesaid first lien note,—that is to say, according to the terms of the transaction as consummated in the aforesaid deed, appellees did not become personally liable to the aforesaid Bank upon the said first lien note, but took title subject thereto.

However, according to the allegations of appellees' pleadings, upon which the trial was had, appellees alleged that they assumed the payment of aforesaid first lien note. In this connection, it is noted that the aforesaid Bank, payee in aforesaid first lien note, was not made a party to said suit, and did not become a party to said suit. Appellees sought to have cancelled: (1) their note for the principal sum of $19,-762.50, and their deed of trust securing the payment thereof, (2) to recover judgment from appellants of $20,000 of the cash they had paid to appellants, and other payments made by appellees pursuant to the terms of the transaction as consummated. The appellees sought no relief in connection with the bill of sale portion of the transaction, alleging in connection therewith that the articles which were the subject matter of said bill of sale consisted largely of merchandise, which had been sold, and that the value of the articles covered by the bill of sale were of the value of $10,000; and appellees alleged that in the adjustment of equities they are not bound to restore same, but that the sum of $10,000 in connection with the bill of sale portion of the trans-

action may be deducted from the sum recovered by appellees from appellants.

Appellants duly filed their answer to appellees' pleadings and filed a cross-action. But we deem it unnecessary to give any details thereof, as no question of pleadings thereunder arises on this appeal.

The jury found that appellee Joseph D. Chiara was without sufficient mental ability to understand the nature and effect of his acts at all material times; and that he had never regained his mental capacity.

At the close of the evidence, appellees moved that appellee Leonora Chiara, one of the plaintiffs below, as aforesaid, be substituted as "next friend" for appellee Joseph D. Chiara. This motion was not acted upon by the court until the jury's verdict was returned to the effect that said appellee had never regained his sanity. Thereafter the court granted said motion.

Upon the findings of the jury the Court rendered judgment for appellees in the sum of $24,311.95, after calculating the amounts paid by appellees to appellants, and to the benefit of appellants on the note at the South Texas National Bank, and crediting appellants with certain benefits received by appellees. The judgment also (1) cancelled the deed of trust executed by appellees; (2) cancelled the note executed by appellees; (3) cancelled the deed from appellants to appellees, and revested the title to the property in appellants, subject to the first mortgage of the South Texas National Bank; (4) reserved to appellees a lien on the property as security for the judgment, the lien to be inferior to the first mortgage lien of the South Texas National Bank; (5) confirmed title to the personal property conveyed outright by appellants to appellees by separate bill of sale, which reserved no lien whatever, and denied appellees any return of the $10,000 paid in cash for this personal property, on the finding of the jury that the reasonable cash market value of the personal property was $10,000.

Appellants predicate their appeal upon five points. The first point reads: "The judgment of the trial court is fundament-

ally erroneous because it grants a rescission in part only and this cause should be reversed for this reason."

This point of course refers to the action of the court in confirming the title to the personal property conveyed by appellants to appellees by the separate bill of sale, referred to above. The evidence upon the trial showed that all of the items of merchandise, covered by the bill of sale, had been sold by appellees; and further showed that thereafter appellees filed suit for rescission, which appellants duly resisted, and that thereafter, while the suit was pending, appellees returned to the State of New York where they had made their residence before this transaction, and removed the furniture with them to their residence in New York.

The jury found that the value of the items covered by the bill of sale was $10,000. As indicated above, the bill of sale provided that the purchase price of the items covered thereby was $10,000 and the evidence showed that this $10,000 was paid by appellees to appellants. The court rendered judgment to the effect that appellees were not obligated to return items of household furniture which had been transferred to them by the bill of sale (and which constituted a minor portion of the goods covered by said bill of sale), and by the court's judgment appellants were relieved of any liability to return to appellees any part of the sum of $10,000 received by them for the items covered by the bill of sale.

The court's ruling upon the bill of sale portion of the transaction is sustained, and appellant's first point overruled.

■■ It is the settled law of this State that the contract of an insane person is voidable. Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115; Smith v. Thornhill, Tex. Comm.App., 25 S.W.2d 597, 600, and authorities there cited. Under the Sapieha case and those following, an insane person is not held to the same accountability in suits for rescission as to tendering back what he received as applies to a sane person. An insane person seeking rescission is accountable only for so much of the property as he has in his possession at the time he seeks to rescind and if the proof shows that he has sold portions of such property and bought other property with the proceeds thereof and has such other property in his possession, he is accountable therefor and he is also accountable for so much of the property as has been used to purchase necessaries for him. He is not accountable for property which he may have wasted or otherwise disposed of and the basis of this is his insanity, which makes him irresponsible.

■ The evidence here shows that the furniture covered by the bill of sale is in appellees' possession in the State of New York. Appellees were accountable to appellants therefor and the court so held, but the equities of this case did not require that the specific items of household furniture be returned by appellees to appellants. In the case of McCleskey v. McCleskey, Tex.Civ.App., 7 S.W.2d 657, 660, after quoting the rule as to the obligation of a plaintiff seeking rescission, the court continued, "'Conversely, wherever under the circumstances of the particular case, restitution by plaintiff is not essential to the complete administration of justice between the parties, it will not be required. As was said in a well-considered decision, "As to willingness to restore, or offer, or competency, in that regard it goes no further than justice requires. The rule in regard to the matter is equitable not technical. Unreasonable or impossible things which would not, under the circumstances, tend to secure equity are not required."'" In McDonald v. Simons, Tex.Comm.App., 280 S.W. 571, it is said that equity is not unbending in its requirement of the restoration of the exact status quo as to a condition of rescission and cancellation.

Here the court required appellees to account for the value of the household furniture. There is no suggestion that the household furniture had any unique value, and there is no evidence that the judgment rendered by the court did not fully restore the value thereof to the appellants. The appellees encountered the expense of moving the furniture to New York, and as a practical proposition, appellants are in a better position by receiving the value

thereof, as of the date of the bill of sale, than they would be by receiving the specific articles of furniture. The court, under the rule just referred to, was entitled to exercise a sound judicial discretion and the fact that the court did not require the specific articles of furniture to be returned does not give a handle for reversing the court's judgment and remanding for a new trial.

By their second point appellants contend for the first time on appeal that the South Texas National Bank, which was the owner of the first mortgage lien referred to in the foregoing statement of facts, was a necessary party and the failure of the Bank to be a party to this suit constituted a fundamental error, which requires the judgment to be reversed and the cause remanded for a new trial.

This point is overruled.

When the present Texas Rules of Civil Procedure were adopted, the rule as to what constitutes fundamental error apparent upon the face of the record has been held by the Supreme Court to have been changed. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979. But in that case the Supreme Court declined to give an all-inclusive definition of what is now to be regarded as fundamental error which can be raised on appeal without having been assigned below. However, under the old dispensation the failure to make the Bank a party to this suit would not have constituted fundamental error apparent upon the face of the record. This, because the evidence showed that the appellees took the real estate subject to the mortgage lien note, and therefore did not assume any personal liability upon the note, and therefore the Bank was not concerned with whether the transaction was rescinded. It is true that, according to the appellees' pleadings, the Bank did have the personal liability of appellants upon the mortgage note. However, without any objection upon appellants' part, the evidence was introduced which established that appellees took only subject to the mortgage note. In view of T.R.C.P. No. 90 and No. 67 appellants waived this defect in appellees' pleadings.

We overrule appellants' third point, which, in effect, charges that appellees never at any time disaffirmed the transaction and charges that after this suit was filed appellees exercised dominion over the real estate involved, rented out the real estate and received rentals therefor, etc. There could be no higher evidence that appellees disaffirmed the contract than is afforded by a suit having been filed to rescind such transaction. While we have been cited to no authorities where the facts showed that, after the suit was filed to rescind, the insane person continued to exercise dominion over the property he acquired in the transaction sought to be rescinded, we are unable to see how such exercise of dominion by an insane person could in any way alter the rule as to the character of accountability of an insane person. Under the facts in this case, the exercise of such dominion was in the nature of lessening the damages of the party who should lose in the suit to rescind. In the adjustment of equities, the appellants were allowed credits for the rentals received by appellees, from a purported subletting of the premises by the insane person, done after the suit for rescission had been filed.

What we have said disposes of appellants' fourth point, which reads: "The judgment is improper because it fails to require restoration of the value of benefits received by plaintiffs from the property involved, and this case should be reversed for this reason."

Appellants, by their fifth point, urge that the court erred in permitting Dr. Hersloff to testify over their objection that in his opinion Mr. Chiara was not at the present time mentally qualified to testify as a witness.

We have carefully examined the questions asked of, and the answers returned by the doctor, and the objections made thereto. Appellants did not except on the ground, now urged, that the doctor, in effect, was asked for and gave an opinion on the legal capacity of Mr. Chiara to testify. In answer to questions, the doctor gave it as his opinion that Mr. Chiara was convalescent, and was unable to remember,

etc. In any case, the question and answer did not bear on any issue which was submitted to the jury. Besides, the competency of a witness to testify is for the court. We overrule the point.

The judgment is affirmed.