## THORP v. MURCHISON.

### No. 10150.

Court of Civil Appeals of Texas. Austin.

June 10, 1953.

It was alleged that such failures occurred before the primary election held July 26, 1952, in which appellee and appellant were both candidates for the same office.

Neither candidate having received a majority of the votes cast at such primary, their names were placed upon the ballots in the runoff primary election held August 23, 1952, in which election appellee received a majority of the votes cast and was duly certified as the nominee for the office of Constable, Precinct No. 3, Travis County.

It was also alleged that appellee's name appeared on the ballot used in the November 4, 1952, general election and that appellee received 24,956 votes for constable, Precinct 3, Travis County, and appellant received 29 "write in" votes for such office.

Appellant's pleading prays for no relief but alleges that he "was duly elected Constable of Precinct No. 3 of Travis County, Texas, at the general election held for such office in said Precinct No. 3 on November 4, 1952, and here and now gives notice of his claim to said office. * * *"

Appellant relying upon Sec. (h), Art. 14.-08, supra, providing that "Any candidate failing to file such sworn statement [of expenses] at the time provided or swearing falsely therein shall forfeit his right to have his name placed upon the ballot at any subsequent primary, special, or general election", alleged and now contends that all the 24,956 votes cast for appellee were illegally cast and that the 29 votes cast for him being the only legal votes cast resulted in his election as constable.

Appellant relies entirely upon the election statutes citing no other authorities.

Art. 14.09, Election Code, V.A.T.S., provides, in part, that quo warranto proceedings to determine the right of any candidate to have his name placed on the primary election ballot or on the general election ballot may be instituted by any citizen entitled to vote at such election for or against any candidate who may be charged in such proceeding with a violation of Art. 14.08, supra. [1]

Yelderman & Martin, by Wm. Yelderman, Austin, for appellant.

Owens & Purser, by W. Wroe Owens, Austin, for appellee.

HUGHES, Justice.

This purports to be an election contest in which appellant, M. M. Thorp, is contesting the election of appellee, A. W. Murchison, to the office of Constable, Precinct No. 3, Travis County, at the general election held on November 4, 1952.

The grounds of contest, filed in the trial court November 19, 1952, are that appellee failed to comply with Sec. (b), Art. 14.08, Texas Election Code, V.A.T.S., requiring candidates for public office to file expense accounts relating to such candidacy at stated intervals before and after the election in which the candidate's name appears on the ballot.

1. The validity of these provisions is extremely doubtful. See Allen v. Fisher, 118 Tex. 38, 9 S.W.2d 731.

. Appellant has never objected, until the filing of this suit, to any matter relating to the first or second primary elections or the general election or to the acts or conduct of appellee with reference thereto and this record does not disclose any such objection on the part of any other person.

The authorities, as we read them, compel the conclusion that appellant is not entitled to any relief in this proceeding.

■ Appellant's major premise that all the votes cast for appellee were illegally cast is completely erroneous. These votes were valid in every respect. The most that appellee can say regarding them is that they were cast for a candidate who should not have had but did have his name on the ballot.

A similar but much more difficult question was presented in Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, 981.

There Dunlop sued Ramsey to recover the office of County Commissioner. They were the only candidates at the general election Ramsey receiving 12 votes and Dunlop 2. It was Dunlop's contention that Ramsey was ineligible to hold the office and that he, Dunlop, was, therefore, elected.

We quote from the opinion in that case:

"[1] Although that case[2] deals with a primary election wherein Art. 3102, supra, requires that a candidate for district attorney must get a majority of the votes cast for all candidates for that nomination before he can go on the general election ballot as the democratic nominee, whereas we are here considering Art. 3032, R.S.1925, which declares that after the general election the county judge 'shall deliver to the candidate * * * for whom the greatest number of votes have been polled for * * * precinct officers a certificate of election,' we see no difference in the principle to be applied. If public policy, as declared in Art. 3102, requires that the votes cast for an ineligible primary candidate be counted to determine whether his rival has received a majority of the votes cast, we think it follows that the public policy declared in Art. 3032, that a certificate of election be delivered to the candidate for whom the greatest number of votes have been polled, likewise requires that the votes cast for an ineligible general-election candidate be taken into account in order to determine whether his opponent has received the greatest number of votes.

"[2] That is clearly the import of 29 C.J.S., Elections, § 243, wherein it is said: 'It is a fundamental idea in all republican forms of government that no one can be declared elected * * *, unless he * * * receives a majority or a plurality of the legal votes cast in the election. Accordingly, the general rule is that the fact that a plurality or a majority of the votes are cast for an ineligible candidate at a popular election does not entitle the candidate receiving the next highest number of votes to be declared elected.' To the same effect is 20 C.J., p. 207, par. 267. See, also, 18 Am.Jur., p. 353, sec. 263.

"[3] Our holding in no way limits the force of Art. 2927, R.S.1925, as amended by Acts 50th Leg., Reg.Sess. 1947, p. 778, Vernon's Ann.Civ.St. art. 2927, cited in the certificate, which declares that no ineligible candidate shall ever have votes counted for him, at any general, special or primary election. We are not holding that the votes cast for Ramsey must be counted for him but only that they must be taken into account in determining whether or not Dunlop received the greatest number of votes cast.

"[4] There being no question as to the legality of the 12 votes cast for Ramsey other than that he was ineligible to hold the office, it is quite evident that the 2 votes cast for Dun-

2. Allen v. Fisher, cited footnote 1.

lop did not constitute a plurality of the total votes polled."[3]

See also Pena v. Montalvo, Tex.Civ.App., San Antonio, 233 S.W.2d 162, 163, where the Court held that a candidate who did not receive a majority of the votes cast could not, for lack of justiciable interest, maintain a suit against the successful candidate for the purpose of voiding his election on the ground of his ineligibility the Court quoting from 20 C.J., p. 224, as follows:

"Since a candidate who does not receive at least a plurality of all the votes cast cannot be declared elected, it follows that a candidate receiving the next highest number of votes cannot contest the election of the candidate who received the highest number upon the ground of the latter's ineligibility." See, also, 29 C.J.S., Elections, § 266.

The statutes relating to a candidate's ineligibility (1.05, 1.06, Election Code) are much stronger and more commanding than Sec. (h) of Art. 14.08. There is no requirement in this latter statute, as there is in the former, that the votes for the transgressor shall not be counted for him.

Sec. (h), supra, is a penalty statute and must be strictly construed. The courts could not, even if they were so minded, add to the penalty prescribed by such statute. It follows that we are wholly without power to hold that legal votes cast for appellee should not be counted for him.

If appellant ever had a remedy in the premises he has lost it by inaction and lapse of time. It is an impossibility for us now to impose upon appellee the only civil penalty which the law prescribes and forfeit his right to have his name placed on the November 4, 1952, general election ballot.

Whether this proceeding be viewed as an election contest or as a suit for the office appellant is entitled to no relief.

3. This case was prior to the adoption of the present Election Code but the three statutes therein referred to, viz. 2927, 3032 and 3102, R.C.S., 1925, as amended, are now Arts. 1.05, 8.36 and 13.03,

While we have no doubt concerning our disposition of this case we feel reassured in the knowledge that our conclusions coincide with the legislative aim expressed in enacting the Election Code which was "that the will of the people shall prevail and that true democracy shall not perish from the Lone Star State."[4]

The judgment of the trial court is affirmed.

Affirmed.

Election Code, V.A.T.S., respectively, and are unchanged as to the provisions involved in the rulings of the court.

