TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00803-CV







In the Matter of E. F.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-16,361, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 






 A jury found that appellant, a juvenile, did engage in delinquent conduct by
committing the offense of capital murder. See Tex. Fam. Code Ann. § 54.03 (West 1996); Tex.
Penal Code Ann. § 19.03 (West 1994). Appellant waived his right to have the jury determine his
disposition, and the juvenile court assessed a 17-year determinate sentence. In two points of error,
appellant argues that the juvenile court erred in failing to properly admonish him pursuant to
section 54.03(b)(2) of the Texas Family Code (1) and in failing to properly instruct the jury regarding
accomplice witness testimony. We will affirm the juvenile court's judgment.


BACKGROUND

 On the evening of March 30, 1997, several juvenile boys including appellant, then
13 years of age, and two men gathered together at a convenience store. The two adults, David
Carter and Christopher Reed, began to talk about robbing someone. Subsequently, the group
noticed Jesus Manzanares enter the store. J.L., one of the juveniles, determined that Manzanares
had money on his person. Carter announced that he was going to rob Manzanares and asked
appellant if he "wanted to jack." (2) Appellant replied, "Yeah."

 The group watched as Manzanares walked about the store. Manzanares left the
store for a moment. When Manzanares reentered the store shortly thereafter, appellant reported
this information to Carter. C.S., another juvenile, knew where Manzanares lived and told Carter
which direction Manzanares would be headed. Carter then asked appellant to walk with him, and
appellant followed Carter and Reed down the road. Manzanares left the store and walked down
a different street. 

 When the three encountered Manzanares, Carter pointed a gun at Manzanares and
demanded money. Manzanares repeatedly said the word "no" as he backed up toward appellant. 
Carter shot Manzanares. The group then fled, and appellant ran to Reed's house where he joined
J.L. and C.S. Manzanares died of the gunshot wound.

 The police arrested several juveniles, including appellant, J.L. and C.S., and
charged them with capital murder. (3) At appellant's trial, J.L. and C.S. testified for the State. (4) The
jury found that appellant engaged in delinquent conduct because he committed capital murder as
a co-conspirator. Appellant waived his right to jury sentencing, and the juvenile court assessed
a 17-year determinate sentence.


DISCUSSION

Failure to admonish

 In point of error one, appellant argues that the juvenile court erred in failing to
properly admonish him. Specifically, appellant contends that the juvenile court judge failed to
follow the requirements of section 54.03 of the Texas Family Code because the court did not
advise appellant that: (1) a juvenile court adjudication could be admissible during the punishment
phase of any subsequent adult prosecution, and (2) a possible punishment disposition was
probation until the age of 18. See Tex. Fam. Code Ann. § 54.03 (West 1996). (5) However,
appellant did not raise this issue at trial. 

 In order to properly preserve a complaint for appeal, a party must make the
complaint to the trial court by a timely request, objection, or motion. See Tex. R. App. P.
33.1(a). To circumvent this procedural requirement, appellant argues that the court's failure to
follow section 54.03(b) is fundamental error that can be considered at any point in the proceeding
even if the error was not properly preserved. 

 In Pirtle v. Gregory, 629 S.W.2d 919 (Tex. 1982), the supreme court discussed the
history of fundamental or unassigned error in Texas jurisprudence:


"Fundamental error" in civil actions arose in Texas under old statutes that stated
that cases on appeal could be reviewed "on an error in law either assigned or
apparent on the face on the record." 2 Gammel, Laws of Texas 1562 (1898); 3
Gammel, Laws of Texas 393 (1898). The practice of appellate courts in
considering unassigned error was the source of much mischief, and when the Texas
Supreme Court promulgated its Rules of Civil Procedure in 1941, old article 1837
was repealed. Since that time, there has been no rule or statute that authorizes
appellate consideration of errors for which there was no trial predicate that
complained of the error. McCauley v. Consolidated Underwriters, 157 Tex. 475,
304 S.W.2d 265, 266 (1957); Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979,
984 (1947) (Alexander, J., concurring). Fundamental error survives today in those
rare instances in which the record shows the court lacked jurisdiction or that the
public interest is directly and adversely affected as that interest is declared in the
statutes or the Constitution of Texas. State Bar of Texas, Appellate Procedure in
Texas § 11.5 (2d ed. 1979).



Pirtle, 629 S.W.2d at 920. Since Pirtle, the supreme court has consistently adhered to the rule
that fundamental error only survives where the court lacks jurisdiction or the public interest is
directly and adversely affected. See Central Educ. Agency v. Burke, 711 S.W.2d 7, 8 (Tex.
1986); Texas Indus. Traffic League v. Railroad Comm'n, 633 S.W.2d 821, 823 (Tex. 1982); Cox
v. Johnson, 638 S.W.2d 867, 868 (Tex. 1982); see also Estate of Pollack v. McMurrey, 858
S.W.2d 388, 394 (Tex. 1993) (Gonzalez, J. concurring).

 As jurisdiction is not at issue here, we must examine the asserted error's effect on
the public interest. Appellant suggests that the public interest is directly and adversely affected
where the juvenile court fails to properly admonish the juvenile and directs us to several instances
where courts of appeals have found such failure to be fundamental error. These courts have
opined that admonishments under section 54.03 of the Family Code are mandatory and failure to
properly apply them constitutes fundamental error. See In re T.F., 877 S.W.2d 81, 81-82 (Tex.
App.--Houston [1st Dist.] 1994, no writ); In re R.W., 884 S.W.2d 502, 502 (Tex. App.--Corpus
Christi 1994, writ denied); In re L.T., 848 S.W.2d 769, 770 (Tex. App.--Corpus Christi 1993,
no writ); In re O.L., 834 S.W.2d 415, 420 (Tex. App.--Corpus Christi 1992, no writ); In re
G.K.G., 730 S.W.2d 182, 183-84 (Tex. App.--San Antonio 1987, no writ); I.G. v. State, 727
S.W.2d 96, 99 (Tex. App.--San Antonio 1987, no writ).

 This Court has previously considered whether a juvenile court's failure to properly
admonish a juvenile constitutes fundamental error. See In re R.L.H., 771 S.W.2d 697, 702 (Tex.
App.--Austin 1989, writ denied). We held that it did not. See id. In deciding R.L.H., this Court
considered and declined to follow the Fourth Court of Appeals' opinion in I.G. See id. The I.G.
court reasoned that because the Family Code reflected the intent of the legislature that a child
could not be adjudicated as delinquent without being given the prescribed admonishments, the
issue was brought within the public interest. See I.G., 727 S.W.2d at 99. We concluded that this
was not a sufficient basis for finding fundamental error, stating that "[t]he standard in I.G. would
create fundamental error in all causes involving any one of thousands of 'important' statutes." 
R.L.H., 771 S.W.2d at 702. Of equal importance to our decision was the belief that the supreme
court had not made a blanket exception to the law of appellate procedure for all family law
matters. See id. at 702-03.

 Appellant urges us to reconsider our decision in R.L.H. and further argues that this
case is factually distinguishable from R.L.H. In R.L.H. the appellant did not raise his complaint
in his initial brief to this Court, but waited until his motion for rehearing to bring it forward. See
id. at 702. Here, appellant's complaint is found in his original brief. This slight procedural
difference in facts is of no consequence. In both cases the appellant failed to properly preserve
the complaint for appeal by objecting at trial. It is this lack of preservation that forced the
appellant in R.L.H., and forces appellant here, to assert that the failure to admonish is fundamental
error. If the failure to properly admonish is not fundamental error, we have nothing to review.

 In R.L.H. we noted that "[a] direct, adverse effect on the public interest (i.e.
fundamental error) is most commonly found when authority is improperly claimed or exercised." 
Id. at 703 n.6. We cited as examples an instance where a public official was not properly elected, (6)
and where the parties had no justiciable interest in the controversy. (7) See id. In revisiting this
issue we conclude, as we did in R.L.H., that the supreme court still has not extended fundamental
error to cover juvenile admonishments. Fundamental error remains a "rarity" and a "discredited
doctrine." See American Gen. Fire & Cas. Co. v. Weinberg, 639 S.W.2d 688, 689 (Tex. 1982);
Cox, 638 S.W.2d at 868.

 We also observe that a recent amendment to the Family Code reflects the
legislature's indication that irregularities in admonishing under section 54.03 do not constitute a
direct adverse effect on the public interest as declared by the statutes of this state. See Pirtle, 629
S.W.2d at 920. The Family Code now specifically provides that to preserve error in admonishing
a juvenile, the complaint must first be submitted to the trial court. (8) Appellant was charged with
an offense occurring before September 1, 1997, the effective date of the amendment; so the
amendment is not directly applicable to the case before us. However, we construe the amendment
as an indication of the legislature's disapproval of those cases that hold an unassigned
admonishment error to be fundamental error.

 We continue to hold that the failure of a juvenile court to properly admonish a
juvenile pursuant to section 54.03(b) of the Family Code must be presented to the juvenile court
in order to preserve the complaint for appeal. Such failure must be specifically assigned and is
not fundamental error that can be raised for the first time on appeal. We overrule appellant's first
point of error.


Accomplice witness instruction

 In his second point of error, appellant asserts that the juvenile court erred in failing
to properly instruct the jury regarding accomplice witness testimony. Although the court
instructed the jury in his charge about the abstract law concerning accomplice witness testimony,
appellant argues that the juvenile court should have also instructed the jury that J.L. and C.S. were
accomplices as a matter of law. As a result of this omission, appellant contends that the jury did
not know that J.L. and C.S. were accomplices and did not apply the accomplice witness rule to
their testimony.

 When the evidence clearly shows that a witness is an accomplice as a matter of law,
the trial court is under a duty to so instruct the jury. See Solis v. State, 792 S.W.2d 95, 97 (Tex.
Crim. App. 1990); Harris v. State, 645 S.W.2d 447, 454 (Tex. Crim. App. 1985). Because both
J.L. and C.S. were charged with the same offense as appellant, and they both admit to engaging
in acts that played a contributing role in the robbery itself, they were accomplice witnesses as a
matter of law. See Holladay v. State, 709 S.W.2d 194, 196 (Tex. Crim. App. 1986) (witness was
accomplice because he had been charged with committing same offense as appellant); Ashford v.
State, 833 S.W.2d 660, 664 (Tex. App.--Houston [1st Dist.] 1992, no pet.) (witness was
accomplice witness as matter of law because he was indicted for same offense as defendant even
though he was not prosecuted for offense with which defendant was charged). We find, therefore,
that the juvenile court erred in failing to instruct the jury that J.L. and C.S. were accomplice
witnesses as a matter of law.

 To determine whether reversal is required in this case, we must now review the
court's error in light of Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984). In that case
the court of criminal appeals stated in pertinent part:


If the error in the charge was the subject of a timely objection in the trial court,
then reversal is required if the error is "calculated to injure the rights of
defendant," which means no more than that there must be some harm to the
accused from the error. In other words, an error which has been properly
preserved by objection will call for reversal as long as the error is not harmless.



Almanza, 686 S.W.2d at 171 (emphasis in original). Because the jury charge was timely objected
to in this case, only some harm must result from the erroneous charge to warrant reversal. To
ascertain the degree of harm, we must consider the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, counsel's arguments, and any
other relevant information revealed by the record of the trial as a whole. Id.

 Appellant argues that the jurors did not apply the "accomplice witness rule" to
J.L.'s and C.S.'s testimony because they were not aware that J.L. and C.S. were accomplice
witnesses as a matter of law. This error will result in some harm only if J.L.'s and C.S.'s
testimony did not comply with the accomplice witness rule, as accomplice testimony alone will
not support a conviction. See Holladay, 709 S.W.2d at 196. Pursuant to the rule, the testimony
of an accomplice witness must be corroborated by independent evidence tending to connect the
accused with the offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979); see
Holladay, 709 S.W.2d at 196. In addition, the testimony of an accomplice witness cannot be
corroborated by another accomplice witness. Moron v. State, 779 S.W.2d 339, 401 (Tex. Crim.
App. 1985). We must, therefore, examine J.L.'s and C.S.'s testimony as well as the other
evidence introduced at trial to discern whether this testimony was sufficiently corroborated.

 J.L.'s and C.S.'s testimony was similar in many aspects. They both testified about
the events that occurred on March 30, 1997. In particular, J.L. and C.S. asserted that they were
"hanging" with appellant, Carter, and Reed that day at a convenience store when Carter and Reed
began to talk about robbing somebody. J.L. testified that appellant said he was willing to help
them. J.L. provided further that Carter and Reed started to look for someone to rob, and J.L.
determined, with Reed's assistance, that Manzanares had some money. According to J.L.,
Manzanares went outside to the back of the building for a moment. Carter went to see where
Manzanares had gone, but Manzanares reentered the store soon thereafter. J.L. and C.S. testified
that Carter, Reed, and appellant departed before Manzanares; according to both boys, C.S. knew
where Manzanares lived and reported this information to Carter so that they would know which
direction to go. In addition, J.L. and C.S. agreed that Manzanares left the store after this and
began to walk down a different road. C.S. was riding around the area on his bicycle. J.L.
testified that he stayed at the convenience store. C.S. stated that he caught up to the appellant who
was walking slightly behind Carter and Reed, rode around for a short while, and caught up to the
group for a second time. He saw Carter approach Manzanares and ask for money. When
Manzanares repeatedly said "no," C.S. stated that he heard a gunshot and rode off; J.L. testified
that he heard the gunshot as well. J.L.'s and C.S.'s testimony reflects that they joined appellant
later.

 After the incident appellant made two statements to the police. Both were
introduced at trial. In these statements, appellant admitted to everything that J.L. and C.S.
testified to and provided even more detail in certain areas.

 All that is required to sufficiently corroborate an accomplice witness's testimony
is evidence that tends to connect the accused with the commission of the offense; this evidence
need not directly link the accused to the crime or establish guilt by itself. Ashford, 833 S.W.2d
at 665; see also Holladay, 709 S.W.2d at 198. Appellant's statements clearly satisfy this standard,
corroborating both J.L.'s and C.S.'s testimony. See Ware v. State, 475 S.W.2d 930, 932 (Tex.
Crim. App. 1972) (accused's own statements standing alone sufficiently corroborated testimony
of accomplice witness). In fact, appellant's statements support almost everything that J.L. and
C.S. testified to and clearly connect appellant to the commission of the offense. (9) We find that
appellant, therefore, suffered no harm as a result of the juvenile court's error.


CONCLUSION

 We conclude that appellant's first point of error, that the juvenile court failed to
properly admonish appellant, was not properly preserved for appeal. In addition, we find that
although the juvenile court erred in failing to instruct the jury that J.L. and C.S. were accomplices
as a matter of law, this error was harmless because their testimony was sufficiently corroborated
by appellant's own statements. Therefore, we affirm the judgment of the juvenile court.



 

 Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: February 25, 1999

Publish
1. See Tex. Fam. Code Ann. § 54.03(b)(2) (West 1996).
2. In street slang, "to jack" means to rob someone.
3. Carter and Reed were also arrested. The record, however, does not reflect whether they
were charged or tried for this crime.
4. C.S.'s case was dismissed for insufficient evidence. J.L. was granted testimonial immunity
for his testimony.
5. The Family Code instructs the trial court as follows:


 (b) At the beginning of the adjudication hearing, the juvenile court judge
shall explain to the child and his parent, guardian, or guardian ad litem:

 (1) the allegations made against the child;

 (2) the nature and possible consequences of the proceedings, including
the law relating to the admissibility of the record of a juvenile court adjudication in
a criminal proceeding;

 (3) the child's privilege against self-incrimination;

 (4) the child's right to trial and confrontation of witnesses;

 (5) the child's right to representation by an attorney if he is not already
represented; and

 (6) the child's right to trial by jury.


Tex. Fam. Code Ann. § 54.03(b) (West 1996). It is not in dispute that the juvenile court warned
appellant in partial compliance with the Family Code, namely five of the six required admonitions. 
Appellant's complaint is the failure of the court to give the second noted admonishment. 
6. See Ramsey v. Dunlop, 205 S.W.2d 979, 983 (Tex. 1947).
7. See Holland v. Taylor, 270 S.W.2d 219, 220 (Tex. 1954).
8. "In order to preserve for appellate or collateral review the failure of the court to provide the
child the explanation required by Subsection (b), the attorney for the child must comply with Rule
52(a) [now Rule 33.1(a)], Texas Rules of Appellate Procedure . . . ." Act of June 19, 1997, 75th
Leg., R.S., ch. 1086, § 10, 1997 Tex. Gen. Laws 4184 (Tex. Fam. Code Ann. § 54.03(i) (West 
Supp. 1999)).
9. We also note that other witnesses corroborated the testimony of J.L. and C.S. with regard
to the crime itself and appellant's presence with the other participants on the day of the crime.



ts to the police. Both were
introduced at trial. In these statements, appellant admitted to everything that J.L. and C.S.
testified to and provided even more detail in certain areas.

 All that is required to sufficiently corroborate an accomplice witness's testimony
is evidence that tends to connect the accused with the commission of the offense; this evidence
need not directly link the accused to the crime or establish guilt by itself. Ashford, 833 S.W.2d
at 665; see also Holladay, 709 S.W.2d at 198. Appellant's statements clearly satisfy this standard,
corroborating both J.L.'s and C.S.'s testimony. See Ware v. State, 475 S.W.2d 930, 932 (Tex.
Crim. App. 1972) (accused's own statements standing alone sufficiently corroborated testimony
of accomplice witness). In fact, appellant's statements support almost everything that J.L. and
C.S. testified to and clearly connect appellant to the commission of the offense. (9) We find that
appellant, therefore, suffered no harm as a result of the juvenile court's error.


CONCLUSION

 We conclude that appellant's first point of error, that the juvenile court failed to
properly admonish appellant, was not properly preserved for appeal. In addition, we find that
although the juvenile court erred in failing to instruct the jury that J.L. and C.S. were accomplices
as a matter of law, this error was harmless because their testimony was sufficiently corroborated
by appellant's own statements. Therefore, we affirm the judgment of the juvenile court.



 

 Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: February 25, 1999

Publish
1. See Tex. Fam. Code Ann. § 54.03(b)(2) (West 1996).
2. In street slang, "to jack" means to rob someone.
3. Carter and Reed were also arrested. The record, however, does not reflect whether they
were charged or tried for this crime.
4. C.S.'s case was dismissed for insufficient evidence. J.L. was granted testimonial immunity
for his testimony.
5. The Family Code instructs the trial court as follows:


 (b) At the beginning of the adjudication hearing, the juvenile court judge
shall explain to the child and his parent, guardian, or guardian ad litem:

 (1) the allegations made against the child;

 (2) the nature and possible consequences of the proceedings, including
the law relating to the admissibility of the record of a juvenile court adjudication in
a criminal proceeding;

 (3) the child's privilege against self-incrimination;

 (4) the child's right to trial and confrontation of witnesses;

 (5) the child's right to representation by an attorney if he is not already
represented; and

 (6) the child's right to trial by jury.


Tex. Fam. Code Ann. § 54.03(b) (West 1996). It is not in dispute that the juvenile court warned
appellant in partial compliance with the Family Code, namely five of the six required admonitions. 
Appellant's complaint is the failure of the court to give the second noted admonishment. 
6. See Ramsey v. Dunlop, 205 S.W.2d 979, 983 (Tex. 1947).
7. See Holland v. Taylor, 270 S.W.2d 219, 220 (Tex. 1954).
8. "In order to preserve for appellate or collateral review the failure of the court to provide the
child the explanation required by Subsection (b), the attorney for the child must comply with Rule
52(a) [now Rule 33.1(a)], Texas Rules of Appellate Procedure . . . ." Act of June 19, 1997, 75th
Leg., R.S., ch. 1086, § 10, 1997 Tex. Gen. Laws 4184 (Tex. Fam. Code Ann. § 54.03(i) (West 
Supp. 1999)).
9. We also note that other witnesses corroborated the testimony of J.L. and C.S. with regard
to the crime itself and appellant's presence with the other participants on the day of the crime.