## EDGAR v. SCHMIDT.
### No. 9974.

Court of Civil Appeals of Texas. Austin.
Oct. 31, 1951.

Rehearing Denied Nov. 21, 1951.

Harry S. Pollard, Austin, for appellant.

Hart, Brown & Sparks by Jack Sparks, Austin, for appellee.

HUGHES, Justice.

This is the second appeal of this case. Our opinion on the former appeal is found in 221 S.W.2d at page 867. Reference is here made to that opinion for a more detailed statement of the case than we now present.

The suit was by appellee, Richard Schmidt, against appellant, Joe Edgar, to recover the reasonable value of service rendered under an oral contract by which Schmidt, a contractor, agreed to undertake making "repairs, alterations, and additions included the repairing and strengthening of said residence (appellant's home), the excavation of dirt from beneath said house, the replacement of outside sills and other timbers and lumber in said house, the replacement of doors and screens, and the construction of a concrete entrance porch."

The value of these services was alleged to be $3479.72, one thousand of which Edgar had previously paid. Prayer was for the recovery of $2479.72, together with six per cent interest thereon from January 1, 1948.

Appellant defended this suit on the grounds (1) that appellee had agreed to do the work for $1920, and (2) that he had failed to perform his undertaking. Appel-

lant also filed a cross action for damages resulting from the work which appellee had performed.

Seventeen special issues were submitted to the jury and it found them all in appellee's favor. Without giving each separate finding, it is sufficient to say that the jury found that the true agreement was that Edgar would pay a reasonable sum for the materials furnished and the work performed; that such services were properly performed and that they and the materials furnished were of the reasonable value of $3479.72.

All issues based on appellant's cross action were answered adversely to him.

Appellant has twenty-three points but they are all comprehended in the following basic issues:

Whether the work and materials furnished by Schmidt were reasonably necessary to repair the Edgar residence to prevent it from settling and cracking.

Whether the work and materials furnished by Schmidt accomplished the admitted object of the agreement to make necessary repairs to the Edgar residence to prevent it from settling and cracking.

The reasonable value of the necessary work and materials furnished by Schmidt necessary to the repair of the Edgar residence to prevent it from settling and cracking.

Whether the Edgar residence was damaged by either (a) the work actually done by Schmidt, or (b) the failure of Schmidt to accomplish the object of the agreed contract to make repairs to the Edgar residence to prevent it from settling and cracking.

The amount of any such damage to the Edgar residence.

Appellant contends that adverse answers to these issues were without any support in the evidence and were "contrary to the preponderance of the competent proof."

The first three issues pertain to appellee's cause of action and will be determined first.

The statement of facts has 525 pages of oral testimony and there is a separate volume of exhibits. Appellant has summarized, in about 30 pages, the evidence upon which he relies and appellee has used about 11 pages for the same purpose.

We have carefully considered the evidence from appellant's point of view for the purpose of determining whether the verdict of the jury is so against the preponderance of the evidence as to be clearly wrong and while we readily concede that a contrary verdict would have been amply supported by the evidence, we are of the opinion that the verdict is valid and must be sustained.

In determining whether there is any evidence to support the verdict, it is our duty to consider only the evidence most favorable to appellee and to disregard all adverse evidence, indulging every legitimate conclusion which tends to uphold the findings of the jury.

With this rule in mind we make the following résumé of the material evidence:

The Edgar house is a two-story frame stucco with a heavy tile roof. It was built before 1923. Prior to 1944 or 1945 the house began to settle and crack. In 1945 Mr. Edgar noticed the cracks and in 1946 he requested appellee to inspect the house and determine the trouble.

There was a three-foot slope from the street to the house and for years water had run under the house. The house was built very close to the ground and proper inspection was impossible without digging an observation ditch.

Neither party knew what was causing the trouble nor how expensive corrective measures would be.

Edgar told appellee to do the work and he would pay for the job and appellee undertook the work with the understanding that he did not guarantee results, he simply was agreeing to do what he thought necessary and for which he would be paid.

Appellee started working on the house in June of 1946. He had to tunnel underneath the house all around the outside perimeter of the foundation. This tunnel had to be large enough to permit use of a wheelbarrow and large enough to permit the workers to dig with picks and shovels.

The sills on which the outside of the house was resting were below the ground level. Water and dampness had caused the sills to rot and deteriorate and the outside sills were completely gone in many places. The joists of the house were not resting on anything. It was necessary to replace the sills. The ditch or tunnel under the house was approximately 4 feet deep and 4 feet wide. This much space was needed to carry on the repair operations. It was necessary for appellee to dig the ditch or tunnel close enough to the outside foundation so that the repair work could be done. The joists underneath the floor of the house were approximately 7 inches above the level of the soil underneath the house. It was not possible to replace the sills unless the ditch or tunnel was dug right next to the outside perimeter of the house, as was done by appellee in this case.

In digging this trench the concrete piers on which the house rested were undermined and a concrete wall was built to replace these piers. The concrete wall was necessary to keep the soil from caving in under the outside foundation of the house. It also served as a retaining wall and as a footing to rest the house on. The footings of the original piers were 2 to 3 feet higher than the bottom of the ditch and it would have been poor construction practice to leave the original piers under the new sills. The concrete wall was poured on firm soil. The original concrete piers on the outside perimeter of the house were 2¼ inches outside of the sills. The original concrete piers had been poured into holes in the ground. At that time they were completely surrounded by solid soil. To effectively carry on the repair operations, it was necessary to dig the ditch below the footings of the original outside piers. Otherwise, there would not have been enough room to do the work necessary to repair the foundation.

In response to questions by counsel for appellant, some witnesses testified that ordinarily it would not be necessary to replace concrete piers which had not settled, but witnesses for appellee all testified that under the peculiar facts involved in the case at bar, it was necessary for appellee to dig the ditch in the manner and at the place it was dug and that, under the facts and circumstances, it was necessary to remove the original piers and replace them with the concrete wall.

Appellee had been in the construction business since 1889. He had had much experience in this type of work and he testified that the work was done as good as this type of work can be done; that the work was done in a good and workmanlike manner.

Walter Schmidt explained in detail the work done by appellee. He testified that the work done was reasonable and necessary to strengthen and to repair the foundation of appellant's house. This witness was an expert, having been in construction work for over thirty years. The foundation placed under appellant's house by appellee was the same in November of 1948 as it had been when the work was done in 1946 and 1947. There had been no sinking or rising of the cement wall since it was poured.

T. A. Webb, a contractor with over thirty years' experience, testified as follows:

"Q. Now, assuming that you find this condition that I have asked you about, what would be the skillful and proper way to remedy that situation? A. Well, you would have to go in and put a foundation under it—a new foundation.

"Q. Now, you saw the concrete wall that was put in there—the foundation which Mr. Schmidt put in there, did you not? A. Yes, sir.

"Q. State to this jury whether or not in your opinion that work was skillfully and properly done. A. Yes, sir; it was done properly.

"Q. State whether or not you think that was necessary to strengthen and repair his foundation. A. Yes, sir; I do."

The testimony showed that the house had settled and cracked long before appellee did any work. While the witnesses for appellant testified to the contrary, Richard Schmidt, Walter Schmidt, Otto Roessler, and T. A. Webb all testified that the work was properly done, that the work done by appellee was reasonable and neces-

sary to strengthen and repair the foundation of the house, and that the charges made by appellee were reasonable and necessary. Witnesses for appellee testified that the condition of the house did not change from the time the work was completed in January of 1947, until the date of the trial. The house had started cracking and settling long before the work was started by appellee.

As to the jury's findings on appellant's cross action, Mr. T. A. Webb testified:

"Q. State whether or not in your opinion the foundation placed in there by Mr. Schmidt could have caused the condition in the interior of the house that you noticed out there. A. Not in the center of the house, the interior partition, that could not have.

"Q. Why not? A. Because he couldn't disturb that part of the foundation at all.

"Q. From your experience as a contractor, are you able to tell the jury that the foundation placed there by Mr. Schmidt did not cause these conditions that we are speaking of on the interior of the house? A. That is right.

"Q. Can you tell the jury whether or not those conditions existed there before the foundation work was done? A. Well, the foundation was there when I first went out there, but I am sure—it looked like old—the joints looked like they had been loose a long time, that sheetrock.

"Q. Did you go upstairs? A. Yes, sir.

"Q. What was the condition of the upstairs floor? A. It was level.

"Q. What was the condition of the downstairs floor? A. The downstairs floor isn't level.

"Q. In your opinion, what caused the unlevel condition of the downstairs floor? A. Well, in my opinion, sir, I think the house was remodeled and the lower floor was never levelled up, because if they had been, the upstairs would not have been level. Across the floor, hall, in the stair hall upstairs, it is absolutely level across there, and right under it, downstairs, why, the floor is all out of level. Some of the

sills underneath the house is as much as an inch and a half or two inches low at places.

"Q. Did you notice the sills underneath the house? A. Yes, sir.

"Q. And I believe you say some of the sills are lower than some of the others? A. Yes, sir.

"Q. Could that have been caused by the cement wall being placed there? A. No, sir. Some of it was due to not having footings under there, and when it was remodeled, it was the way it happened."

Our conclusion is that, in all respects, the findings of the jury are supported by the evidence.

Appellee has cross assigned error to the failure of the trial court to allow him six per cent interest on the amount of his judgment from January 30, 1947, the date on which the sum owing became due and payable, up to the date of the judgment.

Assuming that appellee was entitled to recover this interest and that the trial court erred in not allowing it, we are of the opinion that appellee has waived his right to complain.

Trial was to a jury. Appellee received a favorable jury verdict upon which judgment was rendered in his behalf. Appellee did not file a motion for new trial and there is nothing in the record to show that the error of which he now complains was ever called to the attention of the trial court.

Rule 324, Texas Rules of Civil Procedure, provides in part: "A motion for new trial shall not be necessary in behalf of appellee, except where he complains of the judgment or a part thereof."

Rule 374, Texas Rules of Civil Procedure, provides in part: "The motion for new trial, when required to be filed under these rules, shall constitute the assignments of error on appeal or writ of error. A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived."

Since appellee is complaining of a portion of the judgment, it is clear that the above rules are applicable and that he has

waived the asserted error. 3–B Tex.Jur. p. 65 and p. 308; Long v. Mooring, Tex. Civ.App., Austin, 183 S.W.2d 232; Walker-Smith Co. v. Coker, Tex.Civ.App., Eastland, 176 S.W.2d 1002, writ ref. w. o. m.

We will, however, discuss the following authorities cited by appellee in support of its contention that the cross-assignment of error as to interest should be considered: O'Neil v. O'Neil, Tex.Civ.App., Eastland, 77 S.W.2d 554, writ dism.; Ward v. Scarborough, Tex.Com.App., 236 S.W. 441; Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427; Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571; and Maxwell v. Maxwell, Tex.Civ.App., Amarillo, 204 S.W.2d 32, 40, writ ref. n. r. e.

The O'Neil case was decided prior to the adoption of the present Rules of Civil Procedure. In this case assignments made by appellee which attacked the judgment were sustained by the Court of Civil Appeals on the ground that they constituted fundamental error. Furthermore, while a jury heard the case, it was discharged by the court and judgment rendered without its aid.

Because of these facts, we do not consider the O'Neil case in point.

The Ward case was decided long before the adoption of the present rules. In this case after a jury verdict, appellee filed a motion for a new trial and gave notice of appeal from the order overruling it. The case is, therefore, not in point.

The opinion in the Branum case was written by present Chief Justice Hickman of the Supreme Court, in 1945. In that case the court said: "Whatever might have been the effect of the rule (420, T.R. C.P.) prior to its amendment, it is clear that by such amendment the right of an appellee to cross-assign errors was recognized and confirmed. Whether or not he would be required to file a motion for new trial the same as an appellant is not before us, for that was done in this case and the cross points are based on assignments contained therein." [143 Tex. 366, 185 S.W.2d 430.]

It is obvious that this case is not in point.

The opinion in Bowman v. Puckett, supra, was written by present Supreme Court Associate Justice Smedley in 1945, in which he stated that the Court of Civil Appeals was correct in considering errors assigned by the respondent. This was not a jury trial. Appellee excepted to the findings of the trial court, filed a motion for new trial and excepted to the judgment. The case is not in point.

The Maxwell case was a suit by a divorced mother against a father to recover monies spent for the support of their minor daughter. Issues concerning those expenditures were submitted to a jury. From a verdict judgment favoring plaintiff, the defendant appealed. Appellee did not file a motion for new trial but on appeal the court considered and sustained a cross assignment of error by appellee in which she complained of the action of the trial court in sustaining certain exceptions to her pleadings, wherein she sought recovery of an interest in certain property, and reversed and remanded the cause for trial on the issues raised by the stricken pleadings.

The Court of Civil Appeals said: "These cross assignments come within the purview of Rule 324". T.R.C.P. Apparently the court was of the view that these proceedings were tantamount to "withdrawing the case from the jury and rendering judgment," as to the asserted property rights, within the meaning of such rule.

Conceding the correctness of that opinion, we do not consider it applicable to the question presented by this record.

Finally, appellee suggests that the failure of the trial court to award him interest is fundamental error.

In Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, the present concept of fundamental error is discussed. See also, 29 Tex. Law Review, 369.

In Kendall v. Johnson, Tex.Civ.App., San Antonio, 212 S.W.2d 232, 234, it is said that "Our jurisdiction to consider fundamental error is at most very limited."

In Ramsey v. Dunlop, supra, it was held that appellate courts may still determine an error which is "truly fundamental," the error considered there being one which directly and adversely affected the interest of the public generally.

In Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, the court held there was no fundamental error in the failure of a district court to go to the limit of its jurisdiction in a child custody case, there being no violation of any fundamental public policy.

Of course no public policy is involved in the question before us and it is our opinion that the error complained of is not "truly" fundamental.

The judgment of the trial court is affirmed.