## WESTERN AUTO SUPPLY CO. v. CLARK.
### No. 10076.

Court of Civil Appeals of Texas. Austin.

Dec. 17, 1952.

Gragg & Storey, by Charles H. Storey, Dallas, for appellant.

David C. McCord, Robert G. Vial and W. S. Barron, Jr., all of Dallas, for appellee.

GRAY, Justice.

On June 14, 1950, appellee purchased from appellant a television set for which he paid $10 down and gave his note for $315.44 payable in monthly installments of $13.15. The note was secured by a chattel mortgage on the set. Appellee also paid $13.50 for a warranty or guarantee of the television set.

The television set was installed in appellee's home with the antenna being placed on the roof. .

The television set did not operate to the satisfaction of appellee who made complaints to appellant. Differences arose between the parties, appellant sequestered the set and filed suit on the note and to foreclose the chattel mortgage lien. Appellee answered and alleged that appellant gave a one year's guarantee on the set and that it failed to make the guarantee good. He also filed a cross action and alleged that appellant represented the set to be of the finest quality; that it would last for several years, and that it would be installed in an efficient and proper manner; that the consideration failed; that the set was not properly installed; that the antenna was installed on the roof of his home in such manner·that the roof was caused to leak in several places making it necessary that a new roof be put on to his damage in the sum of $350.

Upon a jury trial the jury found that: (1) appellant warranted the television set against any material defect for one year from the date of its purchase; (2) the set was materially defective; (3) appellant failed or refused to comply with its warranty; (4) such failure or refusal was not a direct and proximate result of appellee's failure or refusal to permit appellant to properly inspect and repair the set; (5) appellant did not sell appellee a warranty for only ninety days from the date of purchase for $13.50; (7) appellant failed to install the television aerial in a good and workmanlike manner; (8) that such failure directly and proximately caused damage to appellee's roof; (9) it was not necessary to install a new roof on appellee's home in order to repair the damage caused, and (11) the reasonable cost of repairing the roof to the condition it was in prior to the installation of the aerial was $200.

Upon the jury's findings the trial court rendered judgment that appellant recover the title and possession of the television set; that appellant recover no money judgment against appellee, and that appellee have judgment against appellant for $200.

■ Appellant's first point is to the effect that the trial court committed fundamental error in entering judgment for rescission of the contract because there was no pleading upon which to base such judgment and because there was no proof or findings of conditions precedent to rescission.

This ground of alleged error was not set out nor complained of in appellant's motion for new trial. Under Rule 374, Texas Rules of Civil Procedure, we are without authority to here pass on the point unless it presents error that comes within the meaning of fundamental error as that term has been determined by our Supreme Court. In Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, 983, the Court said:

"We shall not undertake to give an all-inclusive definition of fundamental error; but, to the purpose of this case, we do hold that an error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this state, is a fundamental error."

Because the public interest is not affected we think the point does not present fundamental error. Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187; Edgar v. Schmidt, Tex.Civ.App., 243 S.W.2d 414.

■ Appellant objected to the submission of special issue 4, supra, and by motion requested the trial court to disregard the answers of the jury to that issue because the evidence is undisputed that appellee and his wife refused to allow appellant to remove the television set from appellee's premises in order to repair it.

Appellee's wife did not testify. Appellee's testimony was to the effect that within about two weeks after the television set was installed it got out of order and would not work; that he made numerous complaints to appellant and requested appellant to fix the set; that appellant made belated trips to his home but never repaired the set so that it would operate. Appellee also advised appellant that his roof was leaking. Appellee said that after he had made several trips to appellant's place of business and requested that the set be fixed, he told appellant he was not coming there any more and that if appellant was not going to fix the set he was not going · to pay for it and "You can come out and fix my roof and pick it up." At the time the set was sequestered appellee registered

his complaint as to the taking of the set until the roof was fixed. The only testimony of any refusal to allow appellant to "take" the set is the following:

"Q. Just answer my questions.

"Mr. McCord: Mr. Clark answered that on direct examination. He testified a man came out to get the television. His wife told him they wouldn't let him have it unless they fixed the roof, on direct examination.

"Mr. Storey: That is what we wanted to establish."

It does not appear the request was to take the set for purposes of repair but from all the evidence it seems apparent that this call was made for the purpose of picking up the set in response to appellee's direction to appellant to come out and fix the roof and pick the set up.

■ Appellant plead and offered testimony that the warranty was for only ninety days while appellee plead and testified that it was for one year. There is no dispute that appellee paid $13.50 for a warranty. Under the conditions of the record before us a fact issue was raised and there was no error in submitting special issue 3, supra.

■■ Appellant says that the trial court failed to advise the jury as to what constitutes material defects, and that there is no evidence to support the jury's finding that the television set was materially defective.

The trial court did not give a definition of "material defect" and appellant did not submit a definition of that term with its objection to the failure of the court to advise the jury as to what would constitute a "material defect." In this state of the record appellant is not entitled to have his complaint reviewed on appeal because he did not tender a substantially correct definition as required by Rule 279, Texas Rules of Civil Procedure, and cannot rely on the provision of Rule 274, Texas Rules of Civil Procedure. Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000.

Appellee's testimony was that the television set worked for about two weeks and that after that time appellant made repairs or adjustments but that the television set did not work properly. Appellant admitted it made three "service" calls in an effort to make the set function.

As generally understood we think the term "material defect" as used in special issues one and two means the want or absence of something (parts or substances) necessary to make the television set function properly. The evidence of appellee shows the set did not so function; that appellant made efforts to repair the set and that such efforts were not successful. The jury was justified in finding that the television set was materially defective.

■ Appellant says the warranty sued on was an agreement to service and not a warranty against any material defect. Appellee alleged:

"That on or about September 15, 1950, the said television set, which was warranted by the cross-defendant to be of the best quality and to last a year, quit showing any pictures on the television screen at all and although cross-plaintiff demanded of cross-defendant that they come out and make same work, cross-defendant failed and refused to so do and in so failing and refusing to so do breached their contract with this cross-plaintiff and breached their warranty * * *."

Appellee testified that he purchased a warranty of the television set for $13.50, and that it was good for one year from the date of purchase.

The terms guarantee and warranty appear to have been used without distinction in the evidence. Appellant's store manager said:

"Q. If he (appellee) had not paid $13.50 he would have got a guarantee of warranty of 90 days bringing the set to your store, is that right? A. That's right.

"Q. On all parts, such as that, but by paying $13.50 he gets home service, is that the purpose of it? A. That's right."

And also said:

"Q. In other words, if Mr. Clark had not paid $13.50 as shown on this

contract for a warranty he would have received no warranty? A. No, sir, he would have had his guarantee which was for 90 days for all workmanship and parts if the set was brought to the store.

"Q. By paying $13.50 as shown on the warranty what did he get in addition to the 90 days service? A. That represents the cost of service calls to his house for a period of 90 days from the first of the sale.

"Q. Without paying $13.50, if I understand your testimony correctly, he would have gotten a 90 day warranty and parts, such as that? A. That's right, if he brought his set to the store. This covers the cost of the service calls to his house during that period of time."

Under the pleadings and the evidence the submission of special issue one was authorized.

■ Appellee testified that the roof on his home was four or five years old, and that it should last about ten years from the time it was put on. He testified to the damage done to the roof by nails being driven into it and by heel prints made by walking on it and to the number of leaks in it. Mr. Inman, a contractor, testified that on February 21, 1951, he examined the roof and estimated the cost to repair the roof and said that estimate was $285. He said that at the time of the trial the costs were fifteen per cent higher than they were the first of the year. He further said that the market value of appellee's house with a good serviceable roof on it was $4,500 and that the value of the house would be the value of the property less the cost of repair. Mr. Inman was talking about the same kind of roof that appellee said was originally placed on his house—Bird Brand composition shingles.

The jury could have found that Mr. Inman's estimate of costs was $327.75, but this amount should have been reduced by depreciation for four years, or $131.08, leaving a balance of substantially the amount found by the jury to be the cost of repair by the answer to issue No. 11. We

therefore cannot say there was no evidence from which the jury could find the cost of repairs of the roof. Moreover it was appellant's position in the trial, as stated by its counsel that:

"* * * replacement value of the roof is not the measure of his damages, if he has suffered any damage. I think his measure of damage is the cash market value of his property before any damage was caused to it."

The judgment of the trial court is affirmed.

Affirmed.